**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 14-cv-01740-WJM-NYW

JOHN DOE,

      Plaintiff,

v.

CHARLES T. MAY, JR., Special Agent in Charge, NCIS Norfolk Field Office,
BRIAN BRITTINGHAM, Supervisory Special Agent, NCIS Norfolk Field Office,
SAMANTHA MARTIN, NCIS Special Agent,
KEVIN C. PRICE, NCIS Special Agent,
JASON TUCKER, MMCM, U.S. Navy, and
JAMES NEWELL, JR., Sergeant, New York State Police,

      Defendants.

---

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

---

Magistrate Judge Nina Y. Wang

This civil action is before the court on the Motion to Dismiss for Lack of Personal Jurisdiction or, Alternatively, for a More Definite Statement ("Motion to Dismiss") filed on March 31, 2015 by Defendants Charles T. May, Jr. ("Defendant May"), Brian Brittingham ("Defendant Brittingham"), Samantha Martin ("Defendant Martin") and Kevin Price ("Defendant Price") (collectively, "NCIS Defendants"). [#46]. This matter was referred to this Magistrate Judge pursuant to the Order Referring Case dated June 24, 2014 [#7], the Order of Reassignment dated February 10, 2015 [#37], and the memorandum dated March 31, 2015 [#47]. Also before the court is Plaintiff's failure to respond to the Order to Show Cause as to why this action should not be dismissed as to Defendants James Newell, Jr. ("Defendant Newell") and

Jason Tucker ("Defendant Tucker") for failure to prosecute, failure to timely effect service of process as required by the Federal Rules of Civil Procedure, and failure to comply with an order of this court. *See* [#57]. After carefully considering the Motion and related briefing, the entire case file, and applicable case law, I respectfully RECOMMEND that the Motion to Dismiss be GRANTED and the Complaint be DISMISSED as to all Defendants.

## PROCEDURAL HISTORY

Plaintiff John Doe[1] initiated this action on June 23, 2014 by filing a *pro se* Complaint pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403, U.S. 388 (1971) asserting violations of his Fourth, Fifth, and Eighth Amendment rights arising out of his arrest and detainment. [#1]. Plaintiff seeks damages in the amount of $27.1 million, as well as injunctive relief. [*Id.* at 14].

Plaintiff immediately sought an order from the court directing the United States Marshal Service to serve Defendants. [#5] Magistrate Judge Boland denied the motion because Plaintiff was not proceeding *in forma pauperis* and did not provide "any competent authority to justify service by the United States Marshal," and ordered Plaintiff to file proof of service as to Defendants on or before October 21, 2014. [#9]. Plaintiff then filed a Motion for Reconsideration of Judge Boland's order, which Judge Boland struck because Plaintiff had signed his name as "John Doe," in contravention of Fed. R. Civ. P. 10(1). [#21, #23]. Plaintiff filed a second Motion for Reconsideration on October 21, 2015, seeking relief from the court's order that he file proof of service for all Defendants by that same day. [#24]. He represented that his repeated attempts to serve Defendants "with multiple process servers" had been

---

[1] The Honorable William J. Martinez, the presiding Judge in this matter, granted Plaintiff's Motion to Proceed Anonymously in an Order dated June 4, 2015. [#55]

unsuccessful because "[a]ll of the process servers are civilians and have been unable to access the military installation where the Defendants are located." *Id.* Judge Boland denied the motion, noting that Plaintiff had not submitted any evidence of attempted service or explanation as to why he could not have Defendants served when they were not at the military installation, and ordered Plaintiff show cause on or before November 10, 2014 why the case should not be dismissed as against all Defendants for failure to prosecute, failure to timely effect service of process as required by the Federal Rules of Civil Procedure, and failure to comply with an order of the court pursuant to D.C.COLO.LCivR 41.1. [#26]. Judge Boland warned Plaintiff that failure to show cause on or before the ordered date would result in a recommendation that the Complaint be dismissed. *Id.* In his Response to the Order to Show Cause, Plaintiff represented that "[t]he only way by which I can effect service of summons on the defendants who are located on Naval Station Norfolk is via the U.S. Marshals Service." [#27]. Judge Boland thereafter recommended that the court dismiss the Complaint without prejudice, noting that Plaintiff had again failed to provide any evidence of attempted service or explanation as to why the defendants could not be served when they were not at the military installation. [#29]. Plaintiff filed a timely objection to Judge Boland's recommendation. [#30].

On December 22, 2014, Judge Martinez sustained Plaintiff's objections, accepting "Plaintiff's assertion that private process servers are unable to access the military base." [#33]. The court found good cause to extend the deadline for service of process and that service by the U.S. Marshals Service was appropriate given the circumstances. *Id.* Judge Martinez then ordered Plaintiff to provide the U.S. Marshals Service with the "detailed address of the Naval base at which the Defendants can be located," on or before February 20, 2015, and required

Plaintiff to remain responsible for serving Defendant Newell, whom Plaintiff acknowledged was not located on the military installation, and to file proof of service regarding Defendant Newell on or before February 20, 2015. *Id.* Judge Martinez additionally extended Plaintiff's time period for service under Fed. R. Civ. P. 4(m) as to all Defendants, except Defendant Newell, until the U.S. Marshals Service had filed proof of service with the court; and ordered the U.S. Marshals Service to file a writing with the court naming any Defendant who could not be located after diligent effort, and further ordered that the deadline for service would not thereafter be extended as to any such Defendant. *Id.*

On January 16, 2015, Plaintiff filed a "Notice of Compliance" with the address at which Defendants May, Brittingham, Martin, Price, and Tucker could be served. [#34]. On March 19, 2015, the U.S. Marshal Service filed executed returns of service for Defendants May, Brittingham, Martin, and Price. [#42, #43, #44, #45]. The U.S. Marshal Service filed unexecuted returns of service for Defendants Newell and Tucker. [#40, #41].

On October 22, 2015, this court issued an Order to Show Cause on or before November 13, 2015 why this case should not be dismissed as to Defendants Newell and Tucker for failure to prosecute, failure to timely effect service of process as required by the Federal Rules of Civil Procedure, and failure to comply with the December 22, 2014 Order pursuant to D.C.COLO.LCivR 41.1. [#57]. The undersigned warned in the Order to Show Cause that Plaintiff's failure to supply an adequate response would result in the recommendation that the Complaint be dismissed as to these Defendants. *Id.* Plaintiff did not file a timely Response, and to date he has not filed proof of service as to Defendants Newell or Tucker.

**FACTUAL BACKGROUND**

The following allegations are taken from the Complaint and deemed true for the purposes of the consideration of the instant Motion to Dismiss. Plaintiff resides in Colorado. *See* [#49 at 2]. Defendants May, Brittingham, Martin, and Price were employed by the Naval Criminal Investigative Service ("NCIS") at the time the events underlying the Complaint took place. [#1 at 3]. Defendant Tucker was commissioned with the United States Navy and Defendant Newell was employed by the New York State Police acting under the direction of NCIS. [*Id.*]

Plaintiff alleges that on June 7, 2012, Defendant Price unlawfully confiscated Plaintiff's personal properly, including several firearms, and a DNA sample before placing Plaintiff into confinement. [#1 at 5-7]. Defendant Price later falsified his report concerning the personal property. [*Id.* at 5-7]. That same day, while escorting Plaintiff, Defendant Tucker's "gross negligence caused Plaintiff to fall," during which he suffered a spinal injury. [*Id.* at 12]. Defendant Tucker deterred the medical personnel who attempted to assist Plaintiff after the fall, and offered Plaintiff pain medication only if he pleaded guilty. [*Id.*] Plaintiff alleges that on an unspecified date, Defendant Newell "knowingly and maliciously charged [him] with felony, despite knowing that the maximum lawful charge was a misdemeanor." [*Id.* at 8]. Plaintiff further alleges that, on an unspecified date, Defendant Price refused his request for an attorney during a police interrogation, and Defendants Newell and Price acted in concert to execute an arrest warrant for Plaintiff after his release from the hospital to conceal Plaintiff's medical condition from the arresting officers. [*Id.* at 9, 10]. Plaintiff asserts that Defendant Price concealed and omitted exculpatory information in his reports regarding the arrest and detainment of Plaintiff. [*Id.* at 10-11]. Several months later, following a November 28, 2012, phone call to

Defendant Brittingham to inquire after the return of his personal property, Defendant Price arrived at Plaintiff's residence "and accosted his landlord demanding to know anything potentially incriminating about Plaintiff and further threatening her with imprisonment." [*Id.* at 10]. Plaintiff alleges generally that Defendants May, Brittingham, Price, and Tucker "had a duty to keep [him] from harm and willfully failed to do so," concealed Plaintiff's spinal cord injury to protect Defendants Price and Tucker, and generally "failed to investigate and instead lied to prosecutors, used intimidation, and wrote false reports." [*Id.* at 13].

On March 31, 2015, the NCIS Defendants filed the Motion to Dismiss, arguing that the court lacks personal jurisdiction over them because Plaintiff has not alleged they had any contact with the state of Colorado. [#46]. In the alternative, the NCIS Defendants ask that the court order Plaintiff to amend his Complaint "to provide a comprehensive chronological narrative, to identify the date on which the alleged relevant events occurred, and to clearly state his claims under the Fourth Amendment." [*Id.* at 2].

On April 22, 2015, Plaintiff filed a Response conceding that the NCIS Defendants are not Colorado residents, but asserting that the District of Colorado is the proper forum pursuant to 28 U.S.C. § 1391(e). [#49]. Plaintiff further asserted that an amendment of the Complaint is not necessary, but offered to provide a more definite statement if ordered by the court. *Id.* The NCIS Defendants filed a Reply on May 11, 2015. [#50]. The Motion to Dismiss is thus ripe for adjudication and oral argument would not materially aid in my deliberation.

**STANDARD OF REVIEW**

Federal Rule of Civil Procedure 12(b)(2) provides that a defendant may move to dismiss a complaint for "lack of jurisdiction over the person." The question of personal jurisdiction must

be addressed before a court can reach the merits of a case, because "a court without jurisdiction over the parties cannot render a valid judgment." *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998) (citing *Leney v. Plum Grove Bank*, 670 F.2d 878, 879 (10th Cir. 1982)).   Plaintiff bears the burden of establishing either specific or general jurisdiction over Defendants.  *See AST Sports Science, Inc. v. CLF Distribution Ltd.,* 514 F.3d 1054, 1056 (10th Cir. 2008).   Where, as in this case, there has not been an evidentiary hearing and the Parties have not presented affidavits or other sworn testimony, the court must accept a plaintiff's well-pled allegations as true in questioning whether the plaintiff has made a *prima facie* showing of personal jurisdiction.  *Dudnikov v. Chalk & Vermillion Fine Arts, Inc.,* 514 F.3d 1063, 1070 (10th Cir. 2008).   In addition, all factual disputes must be resolved in favor of jurisdiction.  *Melea, Ltd. v. Jawer SA*, 511 F.3d 1060, 1065 (10th Cir. 2007).   However, conclusory allegations need not be accepted as true.  *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995).

Pursuant to Federal Rule of Civil Procedure 12(e) "a party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response."  Fed. R. Civ. P. 12(e).  A Rule 12(e) motion is appropriate "only in cases where the movant cannot reasonably be required to frame an answer or other responsive pleading to the pleading in question." *Drury v. Wendy's Old Fashioned Hamburgers of New York, Inc.*, No. 12–2012–JTM–DJW, 2012 WL 2339747, at *2 (D. Kan. June 19, 2012) (quoting Advisory Committee's Note to 1946 Amendments to Fed. R. Civ. P. 12).

Because Plaintiff is appearing *pro se*, the court "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States Govt*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted).  However, a court may not assume that a plaintiff can prove facts that he has not alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged.  *See Gallagher v. Shelton*, 587 F.3d 1063, 1067 (10th Cir. 2009) ("[Court's] role is not to act as [*pro se* litigant's] advocate"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) ("the court will not construct arguments or theories for the plaintiff in the absence of any discussion of those issues") (internal citation omitted).

## ANALYSIS

### I.     Personal Jurisdiction

Pursuant to this instant Motion, the NCIS Defendants challenge this court's personal jurisdiction over them.  Plaintiff asserts this court has personal jurisdiction over the NCIS Defendants pursuant to 28 U.S.C. § 1391(e).  [#49 at 1].  The NCIS Defendants argue that this statute governs whether venue is proper, not whether the court has authority to bind parties in litigation.  The NCIS Defendants further argue that Plaintiff has pled no facts to demonstrate they have sufficient minimum contacts with Colorado,

Section 1391 is entitled "Venue generally," and subsection (e) reads in relevant part:

A civil action in which a defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States, or the United States, may, except as otherwise provided by law, be brought in any judicial district in which (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (C) the plaintiff resides if no real property is involved in the action.

This court respectfully agrees with the NCIS Defendants that this statute does not confer jurisdiction over them, but rather, pertains only to venue.  [#50 at 2-3].  "Section 1391(e) is a venue statute, not a grant of nationwide *in personam* jurisdiction in a personal damage action against a United States official in his individual capacity."  *Overton v. United States*, 925 F.2d 1282, 1284 (10th Cir. 1991) (citation and quotation marks omitted).  The matter of appropriate venue is statutory in nature; whereas "personal jurisdiction implicates constitutional as well as statutory concerns."  14 D Charles A. Wright et. al., *Federal Practice and Procedure* § 3801 (4th ed. 2015) ("subject matter jurisdiction addresses whether a dispute may be heard by a federal court at all…[i]f so, venue then determines *which* federal court.").  *See also Ford v. Valmac Industries, Inc.* 494 F.2d 330, 331 (10th Cir. 1974) ("Jurisdiction is the power to adjudicate," whereas "venue is where judicial authority may be exercised.").  As noted by the NCIS Defendants, a court typically considers whether it may exercise personal jurisdiction over the defendant before then turning to the issue of the appropriate venue.  *Leroy v. Great Western United Corp.*, 443 U.S. 173, 180 (1979).

"[A] state court may exercise personal jurisdiction over a nonresident defendant only so long as there exist 'minimum contacts' between the defendant and the forum State." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291-92 (1980) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 315 (1945)).  The requirement of minimum contacts both "protects the defendant against the burdens of litigating in a distant or inconvenient forum," and "acts to ensure that the States through their courts, do not reach out beyond the limits imposed on them by their status as coequal sovereigns in a federal system." *Id.*  Requiring a defendant to defend a lawsuit in a state with which he possesses minimum contacts does not "offend traditional notions

of fair play and substantial justice." *Dudnikov*, 514 F.3d at 1070 (quoting *International Shoe Co.*, 326 U.S. at 316). In Colorado, because its long-arm statute confers the maximum jurisdiction permissible consistent with the Due Process clause, the inquiry with regard to personal jurisdiction is whether the exercise of such jurisdiction over the defendant comports with constitutional due process demands. *Dudnikov*, 514 F.3d at 1070.

A forum may possess either "general jurisdiction" or "specific jurisdiction" over the defendant. The exercise of general personal jurisdiction comports with due process where the defendant's affiliations with the State are "so continuous and systematic as to render it essentially at home in the forum State." *Archangel Diamond Corporation Liquidating Trust v. OAO Lukoil*, 75 F. Supp. 3d 1343, 1366 (D. Colo. 2014) (quoting *Daimler v. Bauman*, 134 S.Ct. 746, 760 (2014)). Specific jurisdiction "encompasses cases in which the suit 'arise[s] out of or relate[s] to the defendant's contacts with the forum.'" *Daimler*, 134 S.Ct. at 748-49 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, n.8 (1983)). To determine whether the exercise of specific personal jurisdiction comports with due process, the court asks "(1) whether the defendant purposefully directed its activities at residents of the forum state; (2) whether the plaintiff's injury arose from those purposefully directed activities; and (3) whether exercising jurisdiction would offend traditional notions of fair play and substantial justice." *Newsome v. Gallacher*, 722 F.3d 1257, 1264 (10th Cir. 2013) (citing *Dudnikov*, 514 F.3d at 1070).

Plaintiff has pled no contacts between the NCIS Defendants and Colorado—either to support general or specific jurisdiction. The NCIS Defendants do not reside in Colorado; indeed, in his Response to the Motion to Dismiss, Plaintiff concedes that "Defendants are nonresidents

of the jurisdiction of this Court." [#49 at 1]. The court's docket indicates that the NCIS Defendants work in Norfolk, Virginia and were served in Norfolk, Virginia. [#34, #42 through #45]. There is no allegation that the NCIS Defendants maintain any type of contact with Colorado, let alone systematic ones that would make the NCIS Defendants "at home" in Colorado. In addition, while Plaintiff describes his allegations of wrongful conduct with detail, including that Defendant Price unlawfully confiscated personal property and later accosted his landlord, he does not identify where the June 7, 2012 search occurred, where he lived on November 28, 2012, or generally where he lived or worked during the time relevant to the allegations. [#1 at ¶¶ 15-17]. Indeed, the allegations refer to a false allegation that Plaintiff's TASER was confiscated from Plaintiff at "Naval Station Norfolk" [*id.* at ¶ 15(h)]; a conspiracy to have Plaintiff arrested by the Virginia Beach police and detained, despite the nonviolent nature of the charge and no flight risk [*id.* at ¶ 15(m)]; and concealment of Plaintiff's injuries from the prosecutors in New York and Virginia [*id.* at ¶ 16(d)]. The allegations do not assert that any of this conduct occurred in Colorado.

The Complaint contains no facts, nor is there any other evidentiary basis, *e.g.*, an affidavit, to support a finding that the NCIS Defendants have continuous and systematic affiliations with Colorado, or to establish that the acts that gave rise to this Complaint occurred in Colorado. Nor is there factual support to a conclusion that the exercise of jurisdiction over these Defendants would not "offend traditional notions of fair play and substantial justice." However significant the plaintiff's contacts with the forum may be, those contacts cannot be "decisive in determining whether the defendant's due process rights are violated." *Walden v. Fiore*, 134 S. Ct. 1115, 1122 (2014) (citing *Rush v. Savchuk*, 444 U.S. 320, 332 (1980)).

In light of its review of the record before it, the court concludes that Plaintiff has not carried even his light burden of establishing that this forum has personal jurisdiction over the NCIS Defendants.

## II.     Transfer Pursuant to 28 U.S.C. §§ 1406(a) and 1631

None of the Parties has raised the issue of transfer of this action to another jurisdiction. Courts in this Circuit, upon determining that personal jurisdiction is lacking, must consider whether to forbear dismissing the action without prejudice in lieu of transferring the action to a forum where personal jurisdiction exists over the defendants.  *See, e.g., Trujillo v. Williams,* 465 F.3d 1210, 1222–23 (10th Cir. 2006) (remanding for district court to consider whether plaintiff's claims should be transferred rather than dismissed). "A court may *sua sponte* cure jurisdictional and venue defects by transferring a suit under the federal transfer statutes, 28 U.S.C. §§ 1406(a) and 1631, when it is in the interests of justice." *Id.* at 1222.  Whether to transfer in the interests of justice is within the trial court's discretion.  *Id.* at 1222-23 (citing *United States v. Botefuhr,* 309 F.3d 1263, 1274 n.8 (10th Cir. 2002).   In considering whether to transfer, the district court may "tak[e] a 'peek at the merits' to avoid raising false hopes and wasting judicial resources that would result from transferring a case which is clearly doomed." *Arocho v. Lappin*, 461 F. App'x. 714, 719 (10th Cir. 2012) (quoting *Haugh v. Booker,* 210 F.3d 1147, 1150 (10th Cir. 2000)).

In following these directives from the Tenth Circuit, I find that the interests of justice do not counsel transferring this case to the Eastern District of Virginia because the Complaint and briefing related to the Motion to Dismiss demonstrate that subject matter jurisdiction is lacking and the defect cannot be cured.  To wit, Plaintiff has filed a *Bivens* action to assert claims of

constitutional violations against federal agents in their official capacities.  The Complaint does not specify in what capacity Plaintiff sued the NCIS Defendants; however, they raised the capacity question in the Motion to Dismiss and elected to proceed "with the understanding that they are sued in their individual capacities" because the Complaint states the causes of action arise under *Bivens*.  [#46 at n.1].  While Plaintiff does not expressly refute this inference in his Response, he relies on the theory that the NCIS Defendants were acting in their official capacity in asserting that 28 U.S.C. § 1391(e) should apply because "Defendants are all officers or employees of the United States and/or an agency thereof…acting in his or her official capacity and/or under color of legal authority."  [##49 at 1].

The doctrine of sovereign immunity provides that the United States is immune from suit unless it expressly consents to be sued.  *United States v. Testan,* 424 U.S. 392, 399 (1976).  "[A]ny action that charges…an official with wrongdoing while operating in his or her official capacity as a United States agent operates as a claim against the United States."  *Simmat v. U.S. Bureau of Prisons,* 413 F.3d 1225, 1231 (10th Cir. 2005) ("There is no such animal as a *Bivens* suit against a public official tortfeasor in his or her official capacity.").  Accordingly, neither the United States nor its agents operating in their official capacity may be sued in a *Bivens* action.  *See, e.g., Smith v. United States*, 561 F.3d 1090, 1099 (10th Cir. 2009) (affirming that a *Bivens* action can be brought "only against federal officials in their individual capacities…*Bivens* claims cannot be asserted directly against the United States, federal officials in their official capacities, or federal agencies") (citations omitted).

Furthermore, from the few dates Plaintiff provides, it may be that most, if not all of his causes of action, are barred by the applicable statute of limitations.  "Although state law

13

establishes    the statute of limitations,    federal    law    determines    when    plaintiffs'

federal *Bivens* claims accrued." *Van Tu v. Koster,* 364 F.3d 1196, 1199 (10th Cir. 2004) (citation

omitted).  In Colorado, *Bivens* actions are governed by a two-year statute of limitations.  Colo.

Rev. Stat. § 13-80-102(1)(g).  *See also White v. Tharp*, No. 06–cv–01179–EWN–KLM, 2008

WL 596156, at *6 (D. Colo. February 29, 2008) ("it is clear and well-established that

[a] *Bivens* action is subject to the two-year personal injury statute of limitations established

by C.R.S. § 13–80–102(g)").  Similarly, in Virginia, *Bivens* actions are subject to a two year

statute of limitations. *See Moody v. DeJesus,* No. CIV A 7:08-CV-00432, 2008 WL 5082432, *2

(W.D. Va. Dec. 1, 2008) (citing Va. Code § 8.01-243(A)).  "[T]he statute of limitations on

a *Bivens* claim begins to run when the plaintiff knows or has reason to know of the existence and

cause of the injury which is the basis of his action." *Van Tu*, 364 F.3d at 1199 (internal quotation

marks and citation omitted).  Plaintiff alleges that "[o]n or about 07 June 2012 through the

present, Defendants May, Brittingham, Martin, Price, Tucker, and Newell have had personal

involvement in violating Plaintiff's constitutional rights by subjecting Plaintiff to numerous

egregious acts and conspiring to do the same."  [#1 at 3].  Plaintiff then details the alleged

wrongful conduct that occurred on June 7, 2012, including that various NCIS Defendants seized

his weapons, keys, and a safe, and photographed Plaintiff's medications.  [*Id.* at ¶ 15(a)-(c), (e)].

Plaintiff did not file this lawsuit until June 26, 2014—beyond the two-year limitation period.[2]

---

[2] The court does not affirmatively conclude whether the claims are time-barred, due to the lack
of any briefing on this issue and the lack of development by any Party as to whether any facts
would support tolling of the statutory allegations.

### III.     Defendants Tucker and Newell

As recounted above, Judge Martinez ordered Plaintiff to remain responsible for serving Defendant Newell on or before February 20, 2015, and specified that the deadline for service would not be extended for any Defendant whom the U.S. Marshal Service was unable to locate. [#33].  Plaintiff did not file proof of service as to Defendant Newell by the required date, and the U.S. Marshal Service was unable to locate Defendant Tucker to effect service.  [#41].  In addition, this court ordered Plaintiff to show cause on or before November 13, 2015, as to why this case should not be dismissed as to Defendants Newell and Tucker for failure to prosecute, failure to timely effect service of process as required by the Federal Rules of Civil Procedure, and failure to comply with the December 22, 2014 Order.  [#57].  Plaintiff did not respond to the Order to Show Cause.

Based on the record before it, this court finds that Defendants Newell and Tucker have not been properly served in this matter, as required by the multiple orders of this court and Rule 4(m) of the Federal Rules of Civil Procedure.  Plaintiff has been specifically warned, on repeated occasions, that failure to properly serve or failure to comply with the court's orders regarding service might result in dismissal.  Nevertheless, Plaintiff has not filed any proof that Defendants Newell and Tucker have been properly served.   As a result, this court respectfully RECOMMENDS that Defendants Newell and Tucker be DISMISSED from this action for lack of proper service and failure to prosecute pursuant to D.C.COLO.LCivR 41.1.  *See e.g., Boyd v. Tkach*, Civil Action No. 99-cv-2431-ZLW-CBS, 2007 WL 1192044 (D. Colo. April 19, 2007).

## CONCLUSION

For the forgoing reasons, I respectfully **RECOMMEND** that:

(1)     The Motion to Dismiss [#46] be **GRANTED** without prejudice;

(2)     The Complaint be dismissed as to Defendants May, Brittingham, Martin, and Price for lack of personal jurisdiction; and

(3)     The Complaint be dismissed as to Defendants Tucker and Newell for failure to prosecute, failure to timely effect service of process as required by the Federal Rules of Civil Procedure, and failure to comply with multiple orders of this court.[3]

---

[3] Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED: November 16, 2015                    BY THE COURT:


                                           s/Nina Y. Wang_____
                                           United States Magistrate Judge